# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| DERRICK W. BLUE, | ) |
| Plaintiff, | ) |
| v. | ) 1:18CV477 |
| ANDREW M. SAUL,<br>Commissioner of Social<br>Security,[1] | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Derrick W. Blue, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 12; see also Docket Entry 11 (Plaintiff's Memorandum); Docket Entry 13 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Nancy A. Berryhill as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff initially applied for DIB on March 10, 2011, and, after denials initially and on reconsideration, Plaintiff did not pursue that application further. (See Tr. 107.) Plaintiff filed a second application for DIB on December 12, 2011, and, after denials at the initial and reconsideration stages of review (see id.), an ALJ issued a decision on February 21, 2014, finding Plaintiff "not disabled" under the Act (Tr. 79-95).[2]

On February 4, 2015, Plaintiff filed the instant application for DIB, alleging a disability onset date of May 21, 2010. (Tr. 234-35.) Upon denial of that application initially (Tr. 106-16, 134-37) and on reconsideration (Tr. 117-28, 139-46), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 147-48).[3] Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 46-78.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 5-17). The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-4, 38-40), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

---

[2] The Appeals Council denied review (Tr. 100-05), and Plaintiff did not pursue any further appeal (see Tr. 107).

[3] At the hearing, Plaintiff amended his onset date to February 22, 2014, the day after the ALJ's unfavorable decision on his second claim for DIB. (See Tr. 8, 49-51.)

2

In rendering that decision, the ALJ made the following findings:

1. [Plaintiff] last met the insured status requirements of the . . . Act on December 31, 2014.

2. [Plaintiff] did not engage in substantial gainful activity during the period from his amended alleged onset date of February 22, 2014 through his date last insured of December 31, 2014.

3. Through the date last insured, [Plaintiff] had the following severe impairment: ischemic heart disease.

. . .

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work . . . except he can lift and carry 20 pounds occasionally and 10 pounds frequently. [Plaintiff] can sit, stand, and walk six hours in an eight-hour workday. He can push and pull as much as he can lift and carry. [Plaintiff] can never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. [Plaintiff] can never have exposure to unprotected heights, occasional exposure to moving mechanical parts, occasional exposure to vibration, and moderate exposure to noise.

. . .

6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work.

. . .

10. Through the date[] last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that

existed in significant numbers in the national economy that [Plaintiff] could have performed.

. . .

11. [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from February 22, 2014, the amended alleged onset date, through December 31, 2014, the date last insured.

(Tr. 10-17 (internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted).

4

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[4]  "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a

---

[4] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

6

'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[5] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[6] Step four then requires the ALJ to assess

---

[5] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an

7

whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[7]

## B. Assignment of Error

In Plaintiff's first and only issue on review, he argues that the ALJ "committed reversible error in failing to give substantial weight to the finding of the Department of Veterans Affairs

---

equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[7] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

[('VA')] that [Plaintiff] had a combined 80[ percent] service[-]connected disability and was unemployable." (Docket Entry 11 at 6 (bold font, capitalization, and single-spacing omitted) (referencing Tr. 257-58).)[8] In particular, Plaintiff maintains that "[t]he general rule in the Fourth Circuit is that 'in making a disability determination, the [ALJ] must give substantial weight to a VA disability rating,'" but "'may give less weight . . . when the record before the ALJ clearly demonstrates that such a deviation is appropriate.'" (Id. at 7 (quoting Bird v. Commissioner, 699 F.3d 337, 343 (4th Cir. 2012)).) According to Plaintiff, "the ALJ committed reversible error by only assigning partial weight to the opinion of the VA regarding [Plaintiff's] medically disabling impairments rather than substantial weight" (id.), because "the ALJ's reasons for discrediting the VA's determination consisted of legally insufficient conclusory statements" (id. at 10 (citing Tr. 14)). Plaintiff further argues that "[t]he ALJ's error [wa]s compounded by her decision that [Plaintiff's] migraines were not severe impairments, and therefore did not result in any significant workplace impairments." (Id. (citing Tr. 10-11).) Plaintiff's contentions fall short.

---

[8] Pin citations to Plaintiff's filings refer to the page numbers that appear in the footer appended to those filings upon their docketing in the CM/ECF system (not to the numbers originally used to paginate those filings).

The VA found Plaintiff 60 percent disabled effective on July 23, 2009, but "assigned a permanent 100[ percent] disability evaluation for [his] service[-]connected []disabilities," because the VA found Plaintiff "unemployable." (Tr. 258.) Effective July 1, 2010, the VA increased Plaintiff's combined disability percentage to 80 percent (see Tr. 257, 258) and, effective August 21, 2013, increased Plaintiff's headaches from 30 percent disabling to 50 percent disabling (see Tr. 258). The record reflects that Plaintiff's service-connected disabling conditions included the following:

- arteriosclerotic heart disease - 60 percent
- migraine headaches - 50 percent
- hypertensive vascular disease - 10 percent

(Tr. 323.)

In Bird, the Fourth Circuit addressed for the first time the "weight that the SSA must afford to a VA disability rating." Bird, 699 F.3d at 343. The court observed the similarities between the evaluation of disability by the VA and the SSA:

> [B]oth the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability. "Both programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims."

Id. (quoting McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002)) (internal citation omitted).

After reviewing the "varying degrees of evidentiary significance" other circuits afford VA disability ratings, the Fourth Circuit held as follows:

> The VA rating decision reached in [the plaintiff's] case resulted from an evaluation of the same condition and the same underlying evidence that was relevant to the decision facing the SSA. Like the VA, the SSA was required to undertake a comprehensive evaluation of [the plaintiff's] medical condition. <u>Because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency</u>. Thus, we hold that, in making a disability determination, the SSA must give <u>substantial weight</u> to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ <u>clearly demonstrates</u> that such a deviation is appropriate.

Bird, 699 F.3d at 343 (emphasis added). Following Bird, the Fourth Circuit further clarified "what an ALJ must do" to clearly demonstrate the appropriateness of a deviation from Bird's substantial weight standard:

> We now conclude, consistent with our sister circuits, that in order to demonstrate that it is "appropriate" to accord less than "substantial weight" to a[ ] disability decision, an ALJ must give "<u>persuasive, specific, valid reasons for doing so that are supported by the record</u>."

Woods v. Berryhill, 888 F.3d 686, 692 (4th Cir. 2018) (quoting McCartey, 298 F.3d at 1076) (emphasis added).

11

In this case, in evaluating the VA's disability rating, the ALJ first stated as follows:

> The record contains documentation of [Plaintiff's] disability rating offered by the [VA]. [Plaintiff] was found 60 percent disabled by the VA as of July 23, 2009 and 80 percent disabled as of June 9, 2010. However, he was considered 100 percent disabled because he was considered unemployable. . . . Partial weight is accorded to the document. However, <u>the evidence and testimony do not support a finding that [Plaintiff] is precluded from all work activity or disabled. Most significantly, a finding of disability by the VA does not equate to a finding of disability by the [SSA]. The VA evaluates [Plaintiff's] impairments by providing percentages to each impairment. However, the [SSA] evaluates [Plaintiff] as a whole and determines whether the severe impairments preclude the performance of his past relevant work or any other work in the national economy</u>.

(Tr. 14-15 (emphasis added) (internal citations omitted).) Here, the ALJ's consideration of Plaintiff's VA disability rating ultimately complies with <u>Bird</u> and <u>Woods</u>.

The ALJ's statement that, "<u>[m]ost significantly</u>, a finding of disability by the VA does not equate to a finding of disability by the [SSA]," because "[t]he VA . . . provid[es] percentages to each impairment[ while ] the [SSA] evaluates [] claimant[s] as a whole" (Tr. 14-15 (emphasis added)), disregards <u>Bird</u>'s holding to the contrary that, "[b]ecause the purpose and evaluation methodology of both programs are <u>closely related</u>, a disability rating by one of the two agencies is <u>highly relevant</u> to the disability determination of the other agency," <u>Bird</u>, 699 F.3d at 343 (emphasis added). Moreover, in <u>Woods</u>, the Fourth Circuit expressly rejected the ALJ's

12

rationale for discounting a state agency Medicaid disability determination that the agency utilized different standards, noting that such a "generic explanation, which could apply to every [state agency Medicaid] decision, [wa]s neither persuasive nor specific." Woods, 888 F.3d at 693. Thus, the difference in methodology between the VA and the SSA, <u>standing alone</u>, does not permit the assignment of less than substantial weight to the VA's disability rating.

The ALJ, however, also found that "<u>the evidence and testimony d[id] not support a finding that [Plaintiff] [wa]s precluded from all work activity or disabled</u>" (Tr. 14 (emphasis added)) and, in the paragraph immediately following his analysis of the VA's disability rating, detailed the record evidence, as well as some of Plaintiff's own statements to his medical providers, that weighed against a finding of disability (and thus contradicted the VA's finding of 100 percent disability):

> [Plaintiff's] assertions regarding his restrictions and limitations are not mirrored in the evidence. The period at issue addresses a small period, February 22, 2014 to December 31, 2014. During the relevant period, <u>[Plaintiff's] heart was found to be normal, as evidenced by numerous cardiac tests</u>. A stress test, performed on October 9, 2014, was normal, and his left ventricular ejection fraction was 49 percent. <u>[Plaintiff] repeatedly denied no [sic] shortness of breath, chest pain, palpitations, irregular heartbeat, syncope, and edema</u>. It was noted by [Plaintiff's] doctor that <u>[Plaintiff] use[d] a treadmill and c[ould] walk on it for twenty to thirty minutes per day</u>. The medical evidence does not establish that [Plaintiff's] ischemic heart disease is of a level and severity that would result in debilitating

13

> limitations. [Plaintiff's] prescribed medication has been discontinued, and he was considered stable from a cardiac standpoint, which is strongly supported by recommendations that he follow up in six to eight months. Additionally, [Plaintiff] has not required recurrent inpatient hospitalizations, recurrent emergency room visits, or surgery. Based on the evidence of record and the limited window of time, [Plaintiff] is not precluded from performing any and all work activity.

(Tr. 15 (emphasis added).) That analysis by the ALJ provided "persuasive, specific, valid reasons . . . supported by the record," Woods, 888 F.3d at 692, for declining to give substantial weight to the VA's disability rating.

Plaintiff also challenges the ALJ's "decision that [Plaintiff's] migraines were not severe impairments, and therefore did not result in any significant workplace impairments." (Docket Entry 11 at 10 (citing Tr. 10-11).) Plaintiff points out that the VA's "50[ percent] rating for migraines is defined in the regulations as migraines '[w]ith very frequent completely prostrating and prolonged attacks [productive] of severe economic inadaptability'" (id. at 11 (quoting 38 C.F.R. § 4.124a (Diagnostic Code 8100 "Migraine"))), which "means that in the period of time immediately prior to [Plaintiff's] amended onset date of [February 22, 2014], the VA had just made a determination that [Plaintiff's] migraines had both become more severe and were having a severe impact on his ability to work" (id.). Plaintiff additionally cites to record evidence and portions of his testimony that he contends

14

demonstrate that his migraines qualified as a severe impairment. (Id. at 11-12 (citing Tr. 62, 63, 64, 73, 259, 347, 349, 387).)

Plaintiff misinterprets the Court's standard of review. The Court must determine whether the ALJ supported her step two severity analysis with substantial evidence, defined as "more than a mere scintilla of evidence but . . . somewhat less than a preponderance," Mastro, 270 F.3d at 176 (brackets and internal quotation marks omitted), and not whether other record evidence exists that weighs against the ALJ's analysis, Lanier v. Colvin, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.").

Furthermore, the ALJ provided the following analysis to support her finding that Plaintiff's migraine headaches failed to qualify as severe:

> [Plaintiff's] . . . migraine[s] . . . are not [a] severe impairment[]. . . . During a neurology consult for headaches on December 11, 2014, [Plaintiff] was noted to be using Tylenol 3 for headaches, taking one tablet when he had a headache. He was off Topamax and refused Botox injections. Moreover, he indicated that he felt great and did not have headaches very often. Months later, in April of 2015, [Plaintiff] reported that his migraine medication was not effective. However, his medication was not changed, and he declined other forms of treatment.
>
> . . .

15

> A review of the medical evidence reflects that [Plaintiff] has not required frequent medication changes or hospitalization for [his migraines]. [Plaintiff] has not sought ongoing specialized treatment. Rather, the medical record indicates that when treated, his . . . migraine[s] . . . are controlled with use of his prescribed medications. Most significantly, [Plaintiff's] treatment records are devoid of evidence that [his migraines] impose significant limitations on his ability to perform work related activities; thus, they are not [a] severe impairment[].

(Tr. 11 (internal citations omitted).) Notably, Plaintiff has not challenged the accuracy of any of the facts on which the ALJ relied in making her non-severity finding. (See Docket Entry 11 at 10-12.) That analysis suffices. See 20 C.F.R. § 404.1522 ("An impairment . . . is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); see also Kirby v. Astrue, 500 F.3d 705, 708 (8th Cir. 2007) ("Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." (internal citation omitted)).

Finally, even if the ALJ erred by finding Plaintiff's migraines non-severe, Plaintiff has failed to show how that error prejudiced him. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). The state agency medical consultant at the reconsideration level of review expressly limited

Plaintiff to light work and included postural and environmental restrictions in the RFC due (in part) to his migraines. (See Tr. 123-24.) The ALJ accorded "[g]reat weight" to the consultant's opinions (Tr. 14) and similarly limited Plaintiff to light work with postural and environmental restrictions in the RFC (see Tr. 12). In other words, the ALJ included restrictions in the RFC to account for Plaintiff's migraines, whether severe or not.

Lastly, Plaintiff points out that, had the ALJ limited Plaintiff to sedentary work, Rule 201.14 of the Medical-Vocational Guidelines ("Grids") would have deemed him disabled. (See Docket Entry 11 at 13-14 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 201.14).)[9] Plaintiff, however, provides no supporting argument for why finding his migraine headaches severe would have compelled the ALJ to restrict Plaintiff to sedentary work. See Hughes v. Astrue, No. 1:09CV459, 2011 WL 4459097, at *10 (W.D.N.C. Sept. 26, 2011) (unpublished) (holding that step two severity finding "is not proof that the same limitations have the greater significant and

---

[9] "The Grids categorize jobs by their physical-exertion requirements, namely, sedentary, light, medium, heavy, and very heavy. There are numbered tables for the sedentary, light, and medium level (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels. Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits h[er] to a sedentary exertional level, then Table No. 1 is the appropriate table. Next, based on the claimant's age, education, and previous work experience, the [table or] rule directs a finding of 'disabled' or 'not disabled.' " Black v. Astrue, No. 3:09CV599, 2010 WL 2306130, at *4 (E.D. Va. Apr. 26, 2010) (unpublished) (internal citations and footnotes omitted), recommendation adopted, 2010 WL 2306136 (E.D. Va. June 3, 2010) (unpublished).

17

specific nature required to gain their inclusion in an RFC assessment").

In sum, the ALJ provided "persuasive, specific, valid reasons for [declining to give substantial weight to the VA's disability rating] that are supported by the record," Woods, 888 F.3d at 692, and properly found Plaintiff's migraines non-severe.

### III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that judgment be entered dismissing this action.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 9, 2019